**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | No. 13-10228 |
| Plaintiff - Appellee, | D.C. No. 3:11-cr-08074-JAT-1 |
| v. | |
| JEFFERSON GATEWOOD, | MEMORANDUM[*] |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the District of Arizona
James A. Teilborg, Senior District Judge, Presiding

Argued and Submitted January 13, 2015
San Francisco California

Before: WALLACE, M. SMITH, and FRIEDLAND, Circuit Judges.

Jefferson Gatewood appeals from his judgment of conviction following a

jury trial for 23 counts of aggravated sexual abuse, aggravated sexual abuse of a

minor, attempted aggravated sexual abuse of a minor, sexual abuse of a minor,

abusive sexual contact with a minor, and kidnapping. Gatewood argues that the

---

[*]     This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

district court improperly applied Rule 403 and violated his due process rights in admitting prior acts evidence and that the district court should not have denied his motion to sever. We have jurisdiction under 28 U.S.C. § 1291. We review for abuse of discretion a district court's ruling under Rule 403 that evidence is more probative than prejudicial, *United States v. LeMay*, 260 F.3d 1018, 1024 (9th Cir. 2001), and a district court's denial of a motion for severance, *United States v. Sullivan*, 522 F.3d 967, 981 (9th Cir. 2008). We affirm.

Under Federal Rule of Evidence 403, the district court may exclude relevant evidence if its probative value is substantially outweighed by unfair prejudice. Fed. R. Evid. 403. In determining whether to admit evidence of a defendant's prior acts of sexual misconduct under Rule 403, the district court should consider factors including (1) "the similarity of the prior acts to the acts charged," (2) the "closeness in time of the prior acts to the acts charged," (3) "the frequency of the prior acts," (4) the "presence or lack of intervening circumstances," and (5) "the necessity of the evidence beyond the testimonies already offered at trial." *LeMay*, 260 F.3d at 1027–28.

The district court correctly concluded that the prior acts evidence was similar to the charged acts given that the prior acts were the same offenses for

2

which Gatewood was charged and they were committed in the same context. *See id.* at 1028. Gatewood does not disagree.

The district court was also correct to conclude that the closeness in time factor weighed in favor of admissibility, given that almost all of the prior acts occurred during the same time period as the charged acts and that the earliest prior act was ten or eleven years prior to the earliest charged act. *See id.* at 1029.

The district court likewise correctly concluded that the frequency of the prior acts weighed in favor of admissibility, and Gatewood does not disagree. The district court properly concluded that the intervening circumstances factor was not relevant in this case.

Finally, the district court correctly concluded that the necessity factor weighed in favor of admissibility because the prior acts evidence would help corroborate the testimony of the victims of charged acts, a conclusion that was supported by the defendants' arguments that the victims were lying and that there was no physical evidence supporting their allegations. *See id.* at 1028 ("prior acts evidence was relevant to bolster the credibility of the victims after [the defendant] suggested they could be fabricating the accusations" and to "counter[] [the defendant]'s claim that there was no evidence corroborating the testimony of [the victims of the charged conduct]"). The fact that the prior acts evidence may not

3

have been absolutely necessary in order to convict Gatewood of the charged acts does not mean that the prior acts evidence had no probative value. *Id.* at 1029 ("Prior acts evidence need not be absolutely necessary to the prosecution's case in order to be introduced; it must simply be helpful or practically necessary").

The district court was correct to weigh the five factors and conclude that almost all of them weighed in favor of admissibility. The factors demonstrated that in this case the "strong prejudicial qualities" inherent in this type of prior acts evidence did not *substantially outweigh* the "significant probative value" of the specific prior acts evidence offered. *Id.* at 1027. There is no reason to think that the volume of similar evidence presented in this case would dramatically reduce the probative value of the prior acts evidence while leaving the prejudicial qualities of the prior acts evidence intact. Thus, the district court did not abuse its discretion in admitting the evidence.

Our holding that the prior acts were properly admitted under Rule 403 necessarily entails the conclusion that admission of the evidence did not violate Gatewood's due process rights. *LeMay*, 260 F.3d at 1027.

With regard to Gatewood's motion to sever, "[i]t is well-settled that the motion to sever must be renewed at the close of evidence or it is waived," *United States v. Sullivan*, 522 F.3d 967, 981 (9th Cir. 2008) (internal quotation marks

4

omitted), *quoting United States v. Alvarez*, 358 F.3d 1194, 1206 (9th Cir.2004). The only exception to this rule is if the defendant "can show either that he diligently pursued severance or that renewing the motion would have been an unnecessary formality," *United States v. Decoud*, 456 F.3d 996, 1008 (9th Cir. 2006). Gatewood failed to renew his motion to sever, and he does not mention the issue in his opening brief or his reply brief. He has thus failed to show that the exception should apply to him and has waived the issue.

**AFFIRMED.**

FRIEDLAND, Circuit Judge, dissenting:

Even when evidence of a defendant's prior acts of sexual abuse is otherwise admissible, "[p]otentially devastating evidence of little or no relevance [must] be excluded under Rule 403." *United States v. LeMay*, 260 F.3d 1018, 1027 (9th Cir. 2001). If this limitation means anything, it means that we must reverse Gatewood's conviction. The district court admitted a staggering amount of evidence at Gatewood's trial—testimony describing at least twenty-three uncharged acts—that had virtually no probative value and ran an overwhelming risk of unfair prejudice.

## I.

Gatewood was charged with twenty-three counts of sexual assault and kidnapping, arising out of fifteen separate incidents involving nine victims. Eight of those victims were under the age of sixteen when the abuse began. Two of them were nine years old.

All nine victims of the charged conduct testified at trial. Each described Gatewood's actions in excruciating detail, and each corroborated key aspects of the others' testimony. For example, multiple victims testified that Gatewood allowed troubled girls to spend time at his house, gave them alcohol (without drinking any himself), and touched them inappropriately (sometimes under the guise of teaching

1

them self-defense).Six additional eyewitnesses provided further corroboration for key aspects of the victims' testimony—for example, that Gatewood had given a particular victim alcohol.  The Government also produced physical evidence suggesting that one victim had been forcibly penetrated.

But all this—consistent testimony from nine victims; corroborating testimony from six additional eyewitnesses; further corroboration from physical evidence—was not enough for the Government.  Over Gatewood's objection, the Government also introduced evidence that Gatewood had engaged in at least *twenty-three* other, uncharged acts of sexual assault.

## II.

"'Where . . . evidence is of very slight (if any) probative value, it's an abuse of discretion to admit it if there's even a modest likelihood of unfair prejudice.'" *United States v. Wiggan*, 700 F.3d 1204, 1213 (9th Cir. 2012) (quoting *United States v. Hitt*, 981 F.2d 422, 424 (9th Cir. 1992)).  Because the uncharged-acts evidence at issue here had very slight (if any) probative value and gave rise to far more than a modest likelihood of unfair prejudice, the district court abused its discretion in admitting that evidence.

In light of the other evidence introduced at Gatewood's trial, the uncharged-acts evidence had little or no probative value.  The Government had an overwhelming amount of other evidence with which to prove every point for which

2

it offered evidence of Gatewood's uncharged acts. The Government argued that the uncharged-acts evidence was necessary to show that Gatewood has a propensity to engage in sexual violence against young victims. But fifteen witnesses, testifying about crimes with which Gatewood was charged, established that Gatewood had such a propensity. The Government also argued that the uncharged-acts evidence was necessary to confirm elements of Gatewood's modus operandi—that Gatewood "committed many of these acts by way of force or by way of providing alcohol to these victims." But, again, fifteen witnesses established that Gatewood committed the charged acts of sexual violence using physical force, and ten of those witnesses also testified that Gatewood's charged acts involved alcohol. Finally, the Government argued that the uncharged-acts evidence was necessary to corroborate testimony from the nine victims of Gatewood's charged conduct. But the Government offers no explanation for how the uncharged-acts evidence corroborates the victims' testimony in a manner not accomplished by the overlapping testimony of each of the other victims regarding the charged counts, plus the testimony of six additional eyewitnesses, plus physical evidence.

When plenty of evidence is already available to prove a point, the probative value of additional evidence on that same point is slight. *Wiggan*, 700 F.3d at 1214; *see also Old Chief v. United States*, 519 U.S. 172, 184 (1997) ("[T]he Rule

403 'probative value' of an item of evidence . . . may be calculated by comparing evidentiary alternatives."). Here, the Government already had an overwhelming amount of other evidence with which to prove every point for which it offered evidence of Gatewood's uncharged acts, so the probative value of the uncharged-acts evidence was (at most) slight.

The uncharged-acts evidence was also overwhelmingly prejudicial. "[I]n the eyes of ordinary Americans, the very worst child rapists—predators who seek out and inflict serious physical and emotional injury on defenseless young children— are the epitome of moral depravity." *Kennedy v. Louisiana*, 554 U.S. 407, 467 (2008) (Alito, J., dissenting). Given this revulsion, few things could be more likely to "have a visceral impact" on a jury, *Hitt*, 981 F.2d at 424, than evidence of child rape.

And even by the standards of crimes that are always horrific, Gatewood's uncharged acts of sexual violence were especially heinous. The uncharged-acts evidence included testimony that:

- Gatewood regularly took a seven-year-old girl into a bathroom, pushed her onto her stomach, and forced his penis into her anus. The girl kicked and hit the floor to make noise while Gatewood raped her, apparently in a desperate effort to cry for help. On other occasions, Gatewood instead forced his penis into her vagina. On still other

4

occasions, Gatewood tried to force the girl's mouth down over his penis, even as she pulled away.

- Gatewood raped one sixteen-year-old girl, and then immediately ordered that girl to bring a second girl to him. Gatewood physically dragged the second girl into a bedroom, while she struggled, and locked the door behind him. As she was dragged into the bedroom, the struggling girl pleaded, "help me."

- Gatewood repeatedly abused a six- or seven-year-old girl by taking her into a bathroom, holding his penis against her vulva, and spitting on her.

- Gatewood approached a nineteen-year-old woman from behind, held a knife to her throat, and forced her into a ditch. Gatewood and two other men then gang-raped the woman in front of her boyfriend— while she begged them to stop—"because they wanted [the boyfriend] to see how much of a whore [she] was."

This uncharged-acts evidence was the most heinous evidence that the jury heard at trial. As terrible as Gatewood's other acts of sexual violence against minors necessarily were, none of the acts for which he actually was charged were more stomach-churning than these four uncharged acts. There was thus far more than a "modest likelihood of unfair prejudice" here. *Wiggan*, 700 F.3d at 1213.

5

The sheer volume of the uncharged-acts evidence exacerbates its prejudicial effect. The Government introduced evidence that Gatewood committed at least *twenty-three* uncharged acts of sexual assault. A large majority of the acts for which evidence was presented at trial were uncharged: The Government introduced evidence of one-and-a-half uncharged acts for every act charged in the indictment. Indeed, this figure likely understates the volume of uncharged-acts evidence, because some of the twenty-three uncharged "acts" were actually long patterns of behavior that spanned months or years. The amount of uncharged-acts evidence admitted here was extreme—and with an extreme amount of uncharged-acts evidence comes an extreme likelihood of unfair prejudice.[1]

The majority, like the district court, seeks to justify admission of the uncharged-acts evidence under the five-factor test outlined in *United States v. LeMay*, 260 F.3d 1018, 1027-30 (9th Cir. 2001). Many of the individual *LeMay* factors do seem to weigh in favor of admission of the uncharged-acts evidence here.[2] But *LeMay* makes clear that, in addition to the particular factors it

---

[1]    To my knowledge, no other federal court has ever admitted anything close to the amount of uncharged-acts evidence that the district court admitted in this case. Indeed, I can find only a single case—*People v. Cardamone*, 885 N.E.2d 1159 (Ill. App. Ct. 2008)—in which a trial court admitted any comparable amount of evidence of uncharged acts of sexual assault. *See id.* at 1182. The Illinois Appellate Court reversed in *Cardamone*, holding that admission of that uncharged-act evidence violated the state-law equivalent of Rule 403. *Id.* at 1186.

[2]    Other circuits have criticized *LeMay*'s efforts to impose a five-factor test on the Rule 403 balancing inquiry. *See Martínez v. Cui*, 608 F.3d 54, 60 (1st Cir.

6

articulated, "district judges must carefully evaluate the potential inflammatory nature of the proffered testimony, and balance it with that which the jury has already heard, the relevance of the evidence, [and] the necessity of introducing it." 260 F.3d at 1030. Here, the uncharged-acts evidence was so inflammatory, and its probative value so slight, that it was an abuse of discretion for the district court to conclude that the evidence could be admitted under Rule 403.[3]

## III.

We must not give the Government "a blank check entitling [it] to introduce whatever evidence it wishes, no matter how minimally relevant and potentially devastating to the defendant." *LeMay*, 260 F.3d at 1022. Because I fear affirming Gatewood's conviction does exactly that, I respectfully dissent.

---

2010) (concluding that there is "no reason to adopt special rules constraining district courts' usual exercise of discretion under Rule 403 when considering evidence under Rule 415"); *United States v. Rogers*, 587 F.3d 816, 823 (7th Cir. 2009) ("If we thought that a list of 'factors' would be helpful in [the Rule 403 balancing inquiry], we would offer one, but, unlike our colleagues in the Ninth Circuit, we believe that lists are unhelpful in the end for this inquiry."); *United States v. Kelly*, 510 F.3d 433, 437 n.3 (4th Cir. 2007) (noting that "the Seventh Circuit's more flexible approach seems preferable" to *LeMay*). While we need not revisit *LeMay* to conclude that the district court erred in this case, it is easy to see how *LeMay*'s five-factor checklist may have diverted the district court's focus from properly conducting the two-factor balancing test that Rule 403 still requires.

[3] The government has not argued here that any error was harmless, so we could affirm on harmlessness grounds only if "the harmlessness of the error [were] not reasonably debatable." *United States v. Gonzalez-Flores*, 418 F.3d 1093, 1101 (9th Cir. 2005). The large number of charged counts and length of the record make it impossible to say that the error here was harmless beyond reasonable debate as to *every* individual count.